UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
CHERYL CHAPMAN,

               Plaintiff,

      -against-

CHOICECARE LONG ISLAND LONG TERM
DISABILITY INCOME PLAN,

             Defendant.
-------------------------------X

<u>MEMORANDUM AND ORDER</u>
98-CV-4475 (DRH)(ARL)

A P P E A R A N C E S:

For Plaintiff:
    Binder & Binder, P.C.
    2805 Veterans Memorial Highway, Suite 17
    Ronkonkoma, New York 11779
      By: John W. DeHaan, Esq.

For Defendant:
    Evan L. Gordon, Esq.
    150 East 58th Street, Suite 2310
    New York, New York 10155

HURLEY, Senior District Judge

       Plaintiff Cheryl Chapman ("Plaintiff" or "Chapman"), as

the prevailing party in this ERISA action, seeks attorneys' fees

and costs in the amount of $72,435.01 pursuant to 29 U.S.C. §

1132(g)(1). In a Memorandum of Decision and Order dated January

21, 2005 ("January 21, 2005 Memo & Order"), the Court denied

Plaintiff's request. Plaintiff appealed the Court's denial. On

appeal, the United States Court of Appeals for the Second Circuit

vacated this Court's judgment and remanded the case for further

consideration. *See Chapman v. ChoiceCare Long Island Long Term*

*Disability Income Plan*, No. 05-0687, 2005 WL 3556194 (2d Cir.

Dec. 29, 2005) ("*Chapman II*"). In particular, the Second Circuit

instructed this Court: (1) to "consider whether the legal precedent established by this case and the benefits that that precedent might confer on other plan participants make an award of attorney's fees appropriate," *id.* at *2, and (2) to perform "an independent analysis of Chapman's application for costs." *Id.* at *1.

With the Circuit Court's directives in mind and for the reasons stated, *infra*, the Court denies Plaintiff's application for attorneys' fees, but grants in part and denies in part her application for costs.

## I.  BACKGROUND

A.  Pre-*Chapman II* History

The facts and procedural history of this case prior to *Chapman II* have been set forth in the Second Circuit's first decision in this case, *Chapman v. ChoiceCare Long Island Long Term Disability Income Plan*, 288 F.3d 506 (2d Cir. 2002) ("*Chapman I*"), in this Court's May 28, 2004 Memorandum of Decision and Order ("May 28, 2004 Memo & Order"), and in this Court's January 21, 2005 Memo & Order, familiarity with all three of which is presumed.  For convenience, the Court reiterates the following:

> Plaintiff commenced this action on June 29, 1998, seeking (1) a declaratory judgment that she was disabled under the Defendant ChoiceCare Long Island Long Term Disability Plan ("Defendant" or "ChoiceCare"), and (2)

-2-

an order directing ChoiceCare to pay her
disability benefits. Initially, this Court
granted ChoiceCare's summary judgment motion
and dismissed Plaintiff's case on March 1,
2001.

Plaintiff appealed, and on April 29,
2002, the Second Circuit vacated this Court's
judgment and remanded the case to resolve[,
inter alia,] whether plaintiff's mental
illness impaired counsel's efforts to file a
timely request for review.

(January 21, 2005 Memo & Order at 1-2.)

On remand from *Chapman I*, Defendant withdrew its claim

that Plaintiff failed to timely file her request for

administrative review. (May 28, 2004 Memo & Order at 3.) The

Court then proceeded with an evidentiary hearing to determine

whether Plaintiff's mental disability prevented her from timely

filing her claim for benefits.[1] After that hearing, during which

considerable evidence outside of Chapman's administrative record

was introduced, it was determined that Plaintiff was entitled to

equitable tolling; thus, the Defendant was directed to consider

---

[1] In granting Defendant's Motion for Summary Judgment, I
ruled that the question of "whether plaintiff was entitled to
equitable tolling for the late filing of her claim was mooted
because plaintiff should have sued First UNUM, the insurance
company, and not the Plan as defendant in her action . . . ."
*Chapman I*, 288 F.3d at 509. As a result of the remand, that
issue , i.e., the timeliness of the initial claim for benefits,
was no longer "mooted" and was, accordingly, thereafter addressed
and resolved. (*See* May 28, 2004 Memo & Order.) Parenthetically,
the equitable tolling issue framed by the Circuit in *Chapman I*
regarding the untimeliness of Plaintiff's request for
administrative review was left unaddressed given ChoiceCare's
post-*Chapman I* decision not to contest the matter further.

-3-

Plaintiff's claim as if timely filed. (*See id.* at 10.)  In doing so, Defendant did not focus solely on the pre-litigation medical information it had received from Plaintiff, but rather broadened its review to include the supplemental materials thereafter provided including the pivotal testimony elicited from Plaintiff's two witnesses at the equitable tolling hearing, viz. Doctors Daryl DiDio and Shobhan Lal.  Based on the expanded record, the Defendant determined that Plaintiff was entitled to benefits under the plan and paid the claim. *See* Br. of Appellee [Def.] at 6, *Chapman II*, 2005 WL 5012405 (2d Cir. July 25, 2005).

B.   The Court's Initial Decision on Plaintiff's Motion
     for Attorneys' Fees and Costs

        As already indicated, this Court initially denied Plaintiff's Motion for Attorneys' Fees and Costs.  In its January 21, 2005 Memo & Order, the Court went through the five factors courts consider when determining whether to award attorneys' fees in an ERISA action. (*See* January 21, 2005 Memo & Order at 2-7.) These factors, often referred to in the Second Circuit as the "*Chambless* factors," are:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

-4-

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815
F.2d 869, 871 (2d Cir. 1987).

This Court found that the first factor favored
Defendant in that the evidence demonstrated "that First Unum did
not act in 'bad faith' when it denied Plaintiff's claim."
(January 21, 2005 Memo & Order at 5-6.)  As to the second factor,
the "Defendant [did] not dispute [Plaintiff's assertion] that it
has the ability to pay the attorney's fees and costs," leading
the Court to conclude "that the second factor, ability to pay,
weighs in [P]laintiff's favor." (*Id.* at 6 (citing *Zervas v.
Verizon New York, Inc.*, No. 01 CV 685, 2002 WL 31553484, at *3
(S.D.N.Y. Nov. 13, 2002)("defendants do not contest this factor,
and accordingly, this factor . . . favors [plaintiff].").) With
respect to the third factor, deterrence, the Court found that
"First Unum denied Plaintiff's claim in accordance with the time
limits of the contract, as equitable tolling had not yet been
established." (*Id.* at 7.)  Therefore, this factor favored
Defendant.  Since Plaintiff ultimately prevailed in the
underlying action, the Court found the fourth factor favored
Plaintiff. (*See id.*)  Finally, as to the fifth factor, the Court
stated, without explanation, that "there is no real benefit to
any class." (*Id.*)  Therefore, the Court ruled against Plaintiff
on this factor. (*See id.*)

The Court did not engage in any independent analysis of

-5-

Plaintiff's requests for costs.

C.   The Second Circuit's Summary Order

In its Summary Order, the Second Circuit "reject[ed] Chapman's arguments that the district court's rulings on the first and third factors were abuses of discretion." *Chapman II*, 2005 WL 3556194, at *2. The Circuit Court made no mention of factors two and four, those being the two factors favoring Plaintiff. It did, however, direct this Court to consider again the fifth *Chambless* factor and to conduct an independent analysis of the Plaintiff's application for costs.

D.   A Summary of the Parties' Filings Since the Remand

Upon the case's remand to this Court, the Court allowed the parties to submit supplemental letter briefs. Both parties filed opening letter briefs and reply letters.

1.   Plaintiff's Opening Letter Brief

Apparently not heeding the Second Circuit's holding as to the first and third factors-that upheld this Court's determinations-Plaintiff argues anew for findings favoring her as to these two factors. (*See* Letter from John W. DeHaan, Esq., Binder & Binder, at 2-3, to Hon. Denis R. Hurley, U.S. District Judge, U.S. District Court, Eastern District of New York, (Feb. 24, 2006) ("Chapman's Letter Br.").) Chapman also argues that "[i]n this case, a *significant* issue of law relating to ERISA was resolved." (*Id.* at 3 (emphasis added).) This, in turn, favors a

-6-

finding for Chapman on the fifth factor-the "common benefit"
prong of the analysis.  (*See id.*)  To support her argument,
Plaintiff asserts, "A WestLaw KeyCite Report on the initial
decision of the Second Circuit [*i.e.*, *Chapman I*] . . . shows that
it has been cited 132 times since April 29, 2002, on the issue of
Equitable Tolling."  (*Id.* (footnotes omitted).)  Chapman
contends, that "[t]he number of other courts, parties and
scholars that recognize the legal issues set forth in this case
demonstrate its significance."  (*Id.*)

### 2.  Defendant's Opening Letter Brief

Predictably, Defendant rejects Plaintiff's position
that this case forges new legal precedent.  (*See* Letter from Evan
L. Gordon, Esq., to Hon. Denis R. Hurley, U.S. District Judge,
U.S. District Court, Eastern District of New York, (Feb. 24,
2006) ("ChoiceCare's Letter Br.").)  Rather, Defendant endeavors
to dispel any weight Plaintiff would have the Court give to the
numerous citations of *Chapman I*; according to the Defendant,
"when *Chapman [I]* is cited in the ERISA context, it is typically
cited for the proposition (which we espoused) that an ERISA
claimant must exhaust her administrative remedies (cited nine
times) or as part of a discussion as to which parties may be sued
in an ERISA action (also cited nine times)."  (*Id.* at 3

(footnotes omitted).[2]) Significantly, the Defendant states: "We found *Chapman [I]* cited in only one ERISA equitable tolling case, with both the Second Circuit and the district court discussing *Chapman [I]* extensively. *Garcia Ramos v. 1199 Health Care Employees Pension Fund*, 2004 WL 1276952 (S.D.N.Y.), *aff'd*, 413 F.3d 234 (2d Cir. 2005)." (*Id.* at 3-4.) Relying primarily on the Circuit decision in *Garcia Ramos*, Defendant posits that *Chapman I* has "not create[d] a precedent establishing equitable tolling of limitations periods in ERISA cases" and, therefore, "there is no precedent that might confer a benefit on 'other plan participants.'" (ChoiceCare's Letter Br. at 6.)

In essence, it is Defendant's position that this case is a unique exception to the rule that where a plaintiff is represented by counsel during the time sought to be tolled, equitable tolling will not be had; the rule of this case is limited to its unusual facts and circumstances. (*See id.* at 6-

---

[2] The omitted footnotes contain citations to the two sets of nine cases referenced in the text. (*See* ChoiceCare's Letter Br. at 3, nn.2-3; *see also id.* at 4 n.4, 5, and nn.5-13 (providing detailed summaries of cases citing *Chapman I* and the context within which cited)). Plaintiff's retort in her March 17, 2006 reply letter that "there are, at present, sixty-two (62) cases on record as citing the 2002 Decision on the point of Equitable Tolling" suffers from the same inadequacy as her initial submission in that it fails to specify the concomitant contexts for the cites. (*See* Pl.'s Mar. 17, 2006 Reply Letter Br. at 3.) Presumably, if any of those cases involved situations akin to Plaintiff's or otherwise supported her position, she would have so indicated.

-8-

7.)

Defendant also asserts that Plaintiff's counsel "did not make a complete record at the administrative level [i.e., the level upon which First UNUM made its initial determination as to whether Plaintiff was entitled to benefits], but attempted to do so in litigation." (*Id.* at 10.) Indeed, it was upon that expanded post-*Chapman I* remand record that First UNUM reversed course and found Plaintiff disabled. (*See id.* at 9-10, as well as the letter referenced therein, to wit, UNUM Provident's Aug. 16, 2004 Letter to Pl.'s Counsel, attached as Ex. A to ChoiceCare's Letter Br.) As a result, Defendant argues "plaintiff may well have received benefits to which she might otherwise not have been entitled." (*Id.* at 10.) Given the totality of the circumstances, including this last scenario, Defendant advocates the application of the American Rule as the more appropriate and fair resolution of Plaintiff's request for attorneys' fees. (*See id.*)

The Defendant also argues that each party should bear its own costs. First, Defendant would have the Court include expert witness fees, if at all, as part of an award of attorneys' fees, and then, if granted, limited to statutory fees and mileage for witnesses. (*See id.* at 11-12.) Second, relying on Federal Rule of Appellate Procedure 39(a)(4), the Defendant states a taxing of costs may only be had on a court order; since there is

not, nor should there be any such order, Defendant should not bear Plaintiff's appellate costs. (*See id.* at 11.) Finally, Defendant argues that there is no statutory authority deeming postal charges recoverable. (*See id.*)

### 3. Plaintiff's Reply Letter

In her reply letter, Plaintiff argues that the fifth prong of the attorneys' fees test is a two-fold consideration. That is, the Court must consider whether the case conveyed a benefit to other plan members or whether the case decided a significant question of law under ERISA. (*See* Letter from John W. DeHaan, Esq., Binder & Binder, at 1-2, to Hon. Denis R. Hurley, U.S. District Judge, U.S. District Court, Eastern District of New York, (Mar. 17, 2006) ("Chapman's Reply Letter").) She also reiterates her position that *Chapman I* "conveys a *significant* benefit to all plans and their administrators, as it clarified the applicability of Equitable Tolling and gives them much needed guidance." (*See id.* at 4 (emphasis added).) Plaintiff also argues that *Chapman I* has legal significance since "[i]f both Defendant and th[e District] Court's prior ruling on Defendant's culpability are correct, then the legal significance of [*Chapman I*] is incontrovertible, because the Second Circuit reversed this Court on this point and remanded for a determination on the applicability of Equitable Tolling." (*Id.* at 4.)

Finally, as to costs, Chapman asserts that the law within this Circuit is that a "[c]ourt may not arbitrarily use its discretion to deny an award of costs to the victorious party." (*Id.* at 6 (citing *Trans World Airlines, Inc. v. Hughes*, 515 F.2d 173, 177 (2d Cir. 1975).)  Plaintiff also informs the Court that she has submitted a revised application for costs that should address issues raises by Defendant. (*See id.* at 6.)

### 4. Defendant's Reply Letter

In its Reply Letter, Defendant reasserts — quoting *Garcia Ramos* — that the Second Circuit did not establish an equitable tolling precedent in *Chapman I*. (*See* Letter from Evan L. Gordon, Esq., to Hon. Denis R. Hurley, U.S. District Judge, U.S. District Court, Eastern District of New York, (Mar. 17, 2006) ("ChoiceCare's Reply Letter."))  Likewise, Defendant reiterates that Plaintiff's bald reliance on the number of times *Chapman I* has been cited in other cases is misleading and a careful review of these other cases shows the citing of *Chapman I* is in support of "general propositions that were established long before *Chapman [I]*." (*Id.* at 2.)  "*Garcia Ramos* is really the only case that discusses *Chapman [I]* in the ERISA equitable tolling context—and it rejects the notion that *Chapman [I]* established a precedent in this regard." (*Id.* (footnote omitted).)  Defendant also asserts:

> Plaintiff next states that, "[p]rior to

> this decision, claimants *may* have been denied
> merely because they were too disabled to file
> a claim within the specified time period.
> After this decision, claimants that are so
> disabled may still get relief under the
> principle of Equitable Tolling." Yet, the
> benefit plan specifically provides that the
> claimant can give notice and proof of claim
> beyond the initial time deadlines if it was
> not reasonably possible for her to do so
> earlier. *See* AR 18 (notice and proof of
> claim). At best, *Chapman [I]* is a *sui
> generis* exception to the general rule that
> equitable tolling will not be permitted to a
> claimant who had retained counsel, as
> plaintiff had, but still filed late.

(*Id.* at 3.) In Defendant's view, "Plaintiff's counsel has not
shown any 'clarified rule,' nor has he shown that the ChoiceCare
plan itself has benefit[t]ed from this litigation, let alone that
any plan or plan participant (other than plaintiff) has
benefit[t]ed." (*Id.*)

The Defendant advances an interesting argument
regarding the taxing of costs. It is Defendant's position that
since it "has paid benefits to plaintiff even though plaintiff
may not have been entitled to benefits at all" (*id.*), as
Defendant asserts is evident from the administrative record
below, but which Defendant chose to pay in deference to this
Court's findings on tolling, it should be spared from having to
shoulder Plaintiff's costs in bringing this action. (*See id.*)
In sum, Defendant presents the equitable argument that since it
allowed Plaintiff to further develop her medical record following
the *Chapman I* remand, which resulted in Plaintiff being awarded

-12-

benefits,

> [t]he administrator should not be placed in a worse position (through the assessment of costs and/or fees) than it would have been in had it not voluntarily chosen to expand the sparse medical record to include evidence presented during the hearing before Your Honor.[2]

---

[2] The sparse medical records plaintiff and her counsel provided to the insurer during the administrative review process consisted of only three pages which are found at pp. 73-74 and 76 of the administrative record. The records did not include anything from Dr. Lal or Dr. DiDio, who were the two witnesses who testified for plaintiff at the evidentiary hearing. In fact, Dr. DiDio had been retained specifically for the litigation. Thus, the reports of plaintiff's two witnesses were submitted to the insurer in October 1999 (well after the administrative record had closed and litigation had commenced).

(*Id.* at 4.)  Finally, Defendant again challenges Plaintiff's request for reimbursement of expert witness expenses as they are not properly awardable as "costs". (*Id.*)

## II. DISCUSSION

### A. Attorneys' Fees

It is settled law that in an ERISA action, a court has discretion to award attorneys' fees to either party. *See Lochner v. UNUM Life Ins. Co. of Am.*, 389 F.3d 288, 298 (2d Cir. 2004); *Salovaara v. Eckert*, 222 F.3d 19, 27 (2d Cir. 2000); 29 U.S.C. §

1132(g)(1).  The Second Circuit instructs that a district court's decision whether to award attorneys' fees in an ERISA case is ordinarily based on five factors, the so-called *Chambless* factors provided earlier.  Further, "'ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights . . . .'"  *Lochner*, 389 F.3d at 298 (quoting *Chambless*, 815 F.2d at 872).

       1.   <u>First Four *Chambless* Factors</u>

As noted, this Court determined in its January 21, 2005 Memo & Order that the first (bad faith) and third (deterrence) *Chambless* factors favored Defendant.  On appeal in *Chapman II*, the Circuit found that neither of those determinations constituted an abuse of discretion.  As a result, factors one and three shall not be revisited in this opinion except that I note, as further evidence of Defendant's lack of bad faith under the first factor, Defendant maintains, and Plaintiff has not claimed otherwise, that it is unlikely that the disability benefits paid to Chapman would have been forthcoming had ChoiceCare elected to limit the materials reviewed to those originally submitted, rather than expanding the administrative record to include the post-*Chapman I* testimony of Doctors Lal and DiDio.

The Circuit did not address my determination of factors two and four, both of which favor Plaintiff.  With respect to

factor two, i.e., Defendant's ability to pay attorneys' fees and costs, my earlier explanation is relatively straightforward and requires no elaboration. However, the situation is otherwise with respect to factor four concerning the relative merits of the parties' positions. This factor favors Plaintiff who "ultimately prevailed in this action." (January 21, 2005 Memo & Order at 7.) However, it warrants mention that Defendant's position in defending its denial of benefits was far from frivolous. Instead, its position, prescinding for a moment from the issue of equitable tolling, appeared sound based on the contract language and the facts as they existed as of the time Plaintiff's application for benefits was denied. With respect to equitable tolling, the Second Circuit had "never squarely held that it applies to time limits that are specified in plan provisions." *Chapman I*, 288 F.3d at 512. Moreover, the concept of equitable tolling is typically invoked by members of the judiciary — albeit rarely and under limited circumstances — to prevent manifest injustice, not by insurance company executives and other business persons endeavoring to determine their rights and obligations under an exiting contract. Accordingly, although this fourth factor favors Plaintiff, its concomitant weight must be significantly tempered with the non-frivolous nature of the positions advanced by the defense.

Attention will next be addressed to the fifth *Chambless*

factor which Plaintiff correctly underscores is the "crucial factor." (Chapman's Letter Br. at 1-2.)

> 2. *Chambless* Factor Five, the Common Benefit Factor

> > a) My Role on Remand as to Factor Five

To partially reiterate, the fifth *Chambless* factor is "whether the action conferred a common benefit on a group of pension plan participants." *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F. 2d 869, 871 (2d Cir. 1987). In *Chapman II*, the Circuit explained that my role on remand as to this factor was to "consider whether the legal precedent established by this case and the benefits the precedent might confer on other plan participants make an award of attorney's fees appropriate." *Chapman II*, 2005 WL at *2.

> > b) The Second Circuit did not Hold in *Chapman I* That Equitable Tolling Applies to Time Limits That are Specified in ERISA Plan Provisions

Plaintiff maintains:

[t]he Circuit Court ruled that the principle of Equitable Tolling extended to ERISA plans that included specific time limits. A WestLaw KeyCite Report on the initial decision of the Second Circuit . . . shows that it has been cited 132 times since April 29, 2002, on the issue of Equitable Tolling. The number of other courts, parties and scholars that recognize the legal issues set forth in this case demonstrate its significance. Prior to this decision, claimants may have been denied merely because they were too disabled to file a claim within the specified time period. After this

-16-

> decision, claimants that are so disabled may
> still get relief under the principle of
> Equitable Tolling. This decision clearly
> grants a benefit to participants in this and
> similar ERISA plans, as well as to those
> ERISA plans, which now have a clarified rule
> to apply to future claims.

(Chapman's Letter Br. at 3.)

Plaintiff's position is incorrect. In *Garcia Ramos* the
Circuit explained: "as we stated in *Chapman [I]* this Court 'ha[s]
never squarely held that [equitable tolling] applies to time
limits that are specified in [ERISA] plan provisions.' [*Chapman
I*, 288 F.3d] at 512. We shall not do so here." *Garcia Ramos*,
413 F.3d at 238 (brackets in original). Instead, the *Chapman I*
Court placed that issue in my hands to determine, subject, of
course, to possible appeal. This is evident from the following
excerpt from *Chapman I*:

> Principal among the issues with which we must
> deal is whether there is a limitations period
> for the filing of plaintiff's administrative
> appeal. Limitations periods perform the
> salutary office of preventing the assertion
> of rights long after memories have faded that
> would show such rights never existed, or had
> been satisfied and extinguished, if they did
> once exist. But a limitations period may
> also sometimes serve as a refuge for an
> inequity, and make the rule designed to
> prevent inequity the very means for it to
> succeed. We leave this question for the
> district court to resolve on the remand that
> we direct in this case.

*Chapman I*, 288 F.3d at 508.

The Circuit's concern regarding the administrative

limitations period gave rise to two sub-issues, viz. (1) whether the lateness of Plaintiff's administrative appeal should be excused on the ground of equitable tolling and (2) "whether the 60 day time limit is enforceable given that such limitation is not mentioned in either the policy or the Summary Plan Description."[3] *Chapman I*, 288 F.3d at 514.

If I determined that "the 60-day time limit" was unenforceable for the reason articulated by the Circuit, the equitable tolling argument as to that deadline would have been rendered academic. Indeed, that is the reason provided by the Circuit for declining to decide whether equitable tolling applies to time limitations set forth in ERISA plans. *Id.* at 512 ("Because this point [whether equitable tolling applies to time limits specified in ERISA plans] may become moot upon remand, we decline, at this time to rule on this important question.").

In sum, it is clear from the perusal of both *Chapman I* and the Circuit decision in *Garcia Ramos* that the Circuit, notwithstanding Plaintiff's insistence to the contrary, did not decide the equitable tolling issue under discussion.

> c) Precedent Value of This Court's Memorandum
>    and Order of May 28, 2004

As noted earlier, this Court, upon remand following *Chapman I*, found that equitable tolling was applicable to the

---

[3] This second sub-issue was raised by the Circuit *sua sponte*. *See Chapman I*, 288 F.3d at 514.

time limitations in the subject ERISA plan and, accordingly, directed Defendant to consider Plaintiff's application on the merits.

The question arises whether my determination as a district court judge resulted in "a common benefit [being conferred] on a group of pension plan participants." *Chambless*, 815 F.2d at 871. For that to occur, the May 28, 2004 Memo & Order must constitute precedent, which precedent aids a sufficient number of plan participants to meet the common benefit standard. By way of format, the issue of precedent will be addressed initially, to be followed by discussions of other subjects bearing on the fifth factor including the common benefits aspect.

The parties have focused their precedent arguments on whether the Second Circuit held in *Chapman I* that equitable tolling applies to time limitations in ERISA plans. Neither has discussed whether my decision has precedential relevance for present purposes. In my judgment, however, that latter question calls for an affirmative answer for several reasons. To begin with, "precedent" is defined in *Black's Law Dictionary* thusly: "An adjudicated case or decision of a court, considered as furnishing an example or authority for an identical or similar case afterwards arising or a similar question of law. . . . Prior cases which are close in facts or legal principles to the

-19-

case under consideration are called precedents." *Black's Law Dictionary* 1176 (6th ed. 1990). Under that definition, my holding in this case although, of course, non-binding, may be of some assistance to another judge, lawyer, or litigant confronted with the same substantive question. As such, it constitutes precedent. Additionally, the Second Circuit apparently views the relevant portion of the May 28, 2004 Memo & Order as precedent, because it has directed that the fifth factor be revisited given "the legal precedent established by this case." *Chapman II*, 2005 WL at *2. And lastly, such cases as *Chambless* represent circuit court decisions articulating the appropriate standards to be employed by district judges in deciding ERISA counsel fee applications. In applying those standards, district judges, of necessity, must consider the precedent value, if any, embodied in their decisions.

Although the May 28, 2004 Memo & Order constitutes precedent, its significance is, at best, *de minimus* for several reasons, one of which pertains to the "common benefit" aspect of the fifth factor. The word "common" has multiple dictionary definitions including "of or relating to a community at large," "belonging to or shared by two or more individuals or things or by all members of a group," and "occurring or appearing frequently." *Merriam-Webster's Collegiate Dictionary* 250 (11th ed. 2003). For purposes of the fifth factor, what constitutes

-20-

commonality? In *Chambless*, the number of incidental beneficiaries of Chambless's court victory were extensive, consisting of a class of older employees whose pension benefits, like Chambless's, were adversely effected by the challenged pension plan amendment.

The common benefit conferred, however, need not aid all plan participants nor be as broad-based as in *Chambless* to satisfy the fifth factor. *See Leyda v. Alliedsignal, Inc.*, 322 F.3d 199, 210-11 (2d Cir. 2003). But if those benefitted represent only a minor subset of plan participants, it is problematic whether the commonality requirement is even met. However, for present purposes, consistent with the principle that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights," *Chambless*, 815 F.2d at 871, I will assume that commonality has been shown by Plaintiff, albeit barely. That being said, attention will now be focused on the concomitant weight to be attached to factor five.

Equitable tolling, by its very nature, is limited to a very few, indeed, "'rare and exceptional circumstances,'" *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)), where "a party is 'prevented in some extraordinary way from exercising his rights,'" *id.* (quoting *Johnson v. Nyack*

*Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)). As the *Zerilli-Edelglass* court stated, one such rare circumstance is "where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Id.* (citing *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002)). And, as the *Brown* court instructed, "whether a mental disability warrants equitable tolling of a filing deadline requires a 'highly case-specific' inquiry." 287 F.3d at 60 (2d Cir. 2002) (citing *Boos v. Runyon*, 201 F.3d 178, 184 (2d Cir. 2000)) (further citation omitted). The number of plan participants whose situation essentially mirrors Plaintiff's — given the "highly case specific inquiry" standard — is seemingly small.[4]

Finally, and more importantly, consideration of equitable tolling claims in an ERISA context predates this action. *See Chapman I*, 288 F.3d at 511-12; *see also* 17 A.L.R. 3d 530, particularly Article III C, § 9[a] the introduction to which reads: "In many cases it has been held or recognized that mental or physical incapacity of the insured to give notice is a valid excuse for not giving notice of claim within the period specified or required in a disability insurance policy or clause." And I

---

[4] Although the burden of proof as to equitable tolling rests with Plaintiff, *see Boos*, 201 F.3d at 185, her submissions are virtually silent concerning the possible number of individuals likely to be benefitted by the positive outcome of her lawsuit.

relied on several cases in making my equitable tolling determination , including two federal district court decisions involving equitable tolling and untimely filings under ERISA plans due to mental illness, viz. *Clark v. Unum Life Ins. Co. of Am.*, 14 F. Supp. 2d 1351, 1355 (S.D. Ga. 1998)("To require a person who is described by some as being 'insane' or 'mentally incompetent' to do something that his disability prevents him from doing places that person in what some would refer to as a 'catch-22' situation."), and *Sirkin v. Phillips Colleges, Inc.*, 779 F. Supp. 751 (D.N.J. 1991)(holding that where an insured fails to meet a deadline imposed under the insurance policy "due to the insured's incapacity to know of or meet her obligation, the deadline . . . is tolled for a reasonable period of time until the insured or her legally appointed guardian is able to cure the deficiency."). (*See* May 28, 2005 Memo & Order at 8-10.) Those district court cases, like mine, are not controlling precedent but may be of some assistance to others confronted with a situation similar to Chapman's. My decision seemingly is less significant, and certainly has no greater persuasive value as non-binding precedent than the decisions upon which I relied.[5]

---

[5]  To the extent a contrary argument might be advanced based on the fact that my decision followed a remand from the Second Circuit, it must be remembered that the subject I ultimately addressed upon remand, i.e., equitable tolling vis-a-vis the late filing of Plaintiff's initial request for benefits, differed from the purpose of the potential equitable tolling consideration to be made on remand as articulated by the Circuit, to wit, to

To partially reiterate this point, Plaintiff insists that the Second Circuit held in her case that equitable tolling was applicable to her attorney's failure to timely seek administrative review of ChoiceCare's denial of her claim for ERISA benefits. As noted, that claim, which is central to her position as to the fifth *Chambless* factor, is erroneous. Unaddressed by Plaintiff, but germane to considering the fifth *Chambless* factor, is the precedent value of my decision of August 28, 2005. For the reasons indicated above, I believe that decision — though far from ground-breaking and based on, inter alia, earlier district court decisions — may be of some aid to others in the ChoiceCare plan who find themselves in a similar situation to Plaintiff, or indeed to like individuals under other ERISA plans. The number of such "other" individuals apparently will be few, however, given that the facts necessary for the successful invocation of equitable tolling based on a mental disability are largely *sui generis*, as implicitly evidenced by the explanation in *Brown v. Parkchester South Condominiums* that the appropriate inquiry under such circumstances is "highly case-specific." 287 F.3d 58, 60 (2d Cir. 2002)(internal quotation marks deleted).

---

determine whether Plaintiff's mental condition "caused [her attorneys] to be unsure of her wishes and to be doubtful of their authority to represent her in pursuing administrative review." *Chapman I*, 288 F.3d at 512.

In sum, the fifth *Chambless* factor favors Plaintiff, but barely so and not for the reason advanced by Plaintiff.

### 3. Based on Consideration of the Five *Chambless* Factors, Plaintiff's Application for Attorneys' Fees is Denied

The Court has considered each of the five *Chambless* factors, no one of which is dispositive. The factors favoring Plaintiff are factor two, Defendant's ability to pay (which has been recognized to be "of little significance," *Zervos v. Verizon New York, Inc.*, 202 WL 31553484 (S.D.N.Y. Nov. 13, 2002)), factor four, looking to the relative merits of the parties' positions, and factor five pertaining to common benefits.

As to the fourth factor, its weight must be significantly tempered, as noted earlier, by the non-frivolous nature of the positions advanced by Defendant. Similarly, as to the fifth factor, Plaintiff's position about the Second Circuit precedent value of the case is off-target and, as a result, so is her argument about the weight that should be afforded to this factor. Indeed, that weight, rather than being formidable as Plaintiff opines, is appropriately categorized as *de minimus*.

In my judgment, appropriately weighed, the factors favoring Plaintiff are more than counterbalanced by those favoring Defendant and, accordingly, Plaintiff's application for attorneys' fees is denied.

B.    Costs

In accordance with the Second Circuit's instruction,
the Court will, as it should have done in the first instance,
consider Plaintiff's application for costs separately from her
request for attorneys' fees.

Plaintiff seeks $11,147.60 in costs, representing
purported recoverable expenses incurred in prosecuting her claim
before me, and in successfully appealing, first, the grant of
summary judgment to Defendant (*Chapman I*, 288 F.3d 506 (2d Cir.
2002)) and, second, the denial of her application for attorneys'
fees and costs (*Chapman II*, 2005 WL 3556194 (2d Cir. Dec. 29,
2005)).   Included within that sum is $4,542.65 representing
"[f]ees for [the two expert] witnesses" who were called by
Plaintiff at the equitable tolling hearing held before me
following the *Chapman I* remand, viz. Shobhan Lal ($1,542.65) and
Daryl R. DiDio, Ph.D. ($3,000). (*See* revised Bill of Costs attach
at Ex. C to Chapman's Letter Br.)

Defendant opposes Plaintiff's application for costs on
multiple grounds, including (1) the $4,542.65 expert fees sought
by Plaintiff, to the extent it exceeds the statutory witness and
mileage fees provided for in 28 U.S.C. § 1821(b), are
recoverable, if at all, only "as part of an attorney's fee

award,"[6] and (2) "[a]ppellate fees ($2,387.61) should not be awarded" because "[u]nder FRAP 39 (A)[sic](4), where a judgment is affirmed in part, reversed in part, modified or vacated, costs may only be taxed as the court orders." (ChoiceCare's Letter Br. at 12.) Moreover, as an omnibus objection to any costs being assessed against it, Defendant argues that ChoiceCare, by granting benefits to Plaintiff based on the post-*Chapman I* expanded administrative record, "paid benefits to Plaintiff even though Plaintiff may not have been entitled to benefits at all." (ChoiceCare's Reply Letter at 3-4.)

### 1. Costs Incurred at District Court Level Generally

Federal Rule of Civil Procedure 54(d)(1), entitled "Costs Other than Attorneys' Fees," provides:

> Except when express provision therefor is made either in a statute of the United States or in these rules, *costs* other than attorneys' fees *shall be allowed as of course to the prevailing party* unless the court otherwise directs.

Fed. R. Civ. P. 54(d)(1) (emphasis added). "[B]ecause Rule 54(d) allows costs 'as of course,' such an award against the losing party is the normal rule obtaining in civil litigation, not the exception." *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001)(citing *Mercy v. County of Suffolk*, 748 F.2d 52, 54 (2d Cir.

---

[6] This argument by Defendant is less than a model of clarity. However, I surmise the above is a fair statement of ChoiceCare's position.

1984)). Therefore, it is the losing party's burden "to show that costs should not be imposed." *Id.* (providing examples of reasons for denial of costs).

The Defendant has failed to meet its burden of showing that costs should not be imposed in this case as is the normal rule. For example, — referencing the examples provided in *Whitfield* — there is no indication of misconduct by the Plaintiff; this case is not of such public importance that it warrants overriding the normal rule; nor does this case involve a difficult issue; and, finally, there is no issue that Defendant is of such limited financial resource that taxing it with costs would be an undue hardship. *See id.* Moreover, Defendant has not established that its previously identified "omnibus objection" to being saddled with costs is sufficient to override the normal rule as to the imposition of costs.

Attention will now be directed to Defendant's objections to paying the fees associated with Doctors Lal and DiDio.

## 2. Costs Incurred for Expert Witnesses

"[T]he Supreme Court has held that the term 'costs' [in Fed. R. Civ. P. 54(d)(1)] includes only the specific items enumerated in 28 U.S.C. § 1920 (1994)." *Whitfield*, 241 F.3d at 269 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1994))(further citation omitted). Included within the

-28-

§ 1920 listing is subdivision 3 which allows that the cost of "[f]ees . . . for . . . witnesses" may be assessed against the losing party. 28 U.S.C. § 1920(3). The amount of the fee recoverable, however, is limited to the amount provided in 28 U.S.C. § 1821. *See Crawford Fitting Co.*, 482 U.S. at 441-42. Section 1821(b) reads:

> A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

28 U.S.C. § 1821(b).

*Crawford Fitting Co.* instructs that the § 1821(b) rate is applicable to lay witnesses and non-court appointed experts alike absent explicit statutory or contractual authorization, neither of which, parenthetically, is claimed by Chapman. *See Crawford Fitting Co.,* 482 U.S. at 441-42 and at 445; *see also Holland v. Valhi, Inc.*, 22 F.3d 968, 979 (10th Cir. 1994)("The fee shifting provision of ERISA, 29 U.S.C. § 1132(g), authorizes that the district court, in its discretion, 'may allow a reasonable attorney's fee and costs of action to either party.' But absent a specific statutory provision, an award of expert fees must be based on 28 U.S.C. §§ 1821 and 1920."); *Harris Trust and Savings Bank v. John Hancock Mutual Life Ins., Co.*, 137 F. Supp. 2d 351, 360 (S.D.N.Y. 2001)("Under well established

-29-

principles of law, however, these expenses [for expert witnesses] are not recoverable, except to the extent of the $40 per day statutory fee and travel expenses for witnesses in general."), *aff'd in part, rev'd in part, vacated in part, and remanded on other grounds*, 302 F.3d 18 (2d Cir. 2002).

Applying the above principles to the present case indicates that Plaintiff, as the prevailing party, is entitled to receive the per diem rate and mileage provided under § 1821(b) for its expert witnesses. The difference between what Plaintiff paid those witnesses and the amounts recoverable under § 1821(b) may not be taxed to Defendant.[7]

### 3. Costs Incurred in the Appellate Court

Plaintiff also seeks the costs incurred in her two successful appeals to the Second Circuit resulting in *Chapman I* and *Chapman II*. By way of support, she argues as follows:

> An award of costs also includes the costs of appeal. Under FEDERAL RULE OF APPELLATE PROCEDURES 39(a), the court may tax the costs of an appeal when an order has been vacated. Plaintiff incurred substantial costs for litigation for two appeals to the Second Circuit, both of which resulted in the vacating of judgement and remand. Plaintiff

---

[7] Defendant's argument that expert fees in excess of those recoverable under § 1821 may only be sought as part of an attorneys' fee award (and presumably subject to the same standards for determination) need not, and will not be addressed in that (1) the Court has denied Plaintiff's request for attorneys' fees, thus mooting the issue, and (2) Plaintiff has tethered its expert fee application solely to its application for costs under Fed. R. Civ. P. 54(d)(1).

> has already suffered severe financial
> hardship due to her disability and
> Defendant's failure to pay disability
> benefits. To not grant an award of costs,
> including the appeal costs, would be to
> further the financial hardship she already
> endures. Therefore, Plaintiff should be
> awarded her costs.

(Chapman's Letter Br. at 4-5.)

Defendant opposes that application upon the ground that "[u]nder FRAP 39(A)[sic](4), where a judgment is affirmed in part, reversed in part, modified or vacated, costs may only be taxed as the court orders. For the reasons discussed above, the court should not place this expense on the plan." (ChoiceCare's Letter Br. at 12.)

In *Chapman I*, this Court's grant of summary judgment to Defendant was "vacated and the case remanded to the district court for further proceedings not inconsistent with this opinion." *Chapman I*, 288 F.3d at 515. In *Chapman II*, my judgment denying attorneys' fees and costs to Plaintiff was "vacated and the case remanded for further proceedings consistent with this opinion." *Chapman II*, 2005 WL at *3. Absent from both *Chapman I* and *Chapman II* is any specific mention of the costs incurred by Plaintiff-appellant on appeal. Under such circumstances, the subsection of Rule 39 cited by Defendant, to wit (a)(4) controls, including the provision that appellate "costs are taxed only as *the court* orders." Fed. R. of App. P. 39(a)(4)(emphasis added).

-31-

The question arises whether "the court" referenced in Rule 39(a)(4) is this Court, the Circuit Court, or both.

Although the answer to that question involves my authority to grant Plaintiff's request of an award of appellate costs, the subject has not been specifically addressed by either party in the apparent belief that the term "this court," as it appears in Rule 39(a)(4), includes the district court. However my reading of the Rule indicates a contrary conclusion for the reasons provided, *infra*. To place that discussion in context, the relevant portions of Rule 39, entitled "Costs," are provided. Rule 39 provides in pertinent part:

(a) <u>Against Whom Assessed</u>. The following rules apply unless the law provides or the court orders otherwise:

(1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;

(2) if a judgment is affirmed, costs are taxed against the appellant;

(3) if a judgment is reversed, costs are taxed against the appellee;

(4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

. . . .

(d) <u>Bill of Costs: Objections; Insertion in Mandate</u>.

(1) A party who wants costs taxed must—within 14 days after entry of judgment—file with the circuit clerk, with proof of service, an itemized and verified bill of costs.

(2) Objections must be filed within 10 days after service of the bill of costs, unless the court extends the time.

(3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must-upon the circuit clerk's request-add the statement of costs, or any amendment of it, to the mandate.

(e) <u>Costs on Appeal Taxable in the District Court</u>. The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:

(1) the preparation and transmission of the record;

(2) the reporter's transcript, if needed to determine the appeal;

(3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

(4) the fee for filing the notice of appeal.
Fed. R. of App. P. Rule 39.

Initially it warrants mention that Rule 39(e) indicates that certain costs incurred on appeal may be assessed "in the district court." Rule 39(e). Those costs, listed in subdivision(e) as (1), (2), (3), and (4) may be awarded "for the benefit of the party entitled to costs under this rule." *Id.* The language "entitled to costs under this rule," necessarily directs the reader's attention from subdivision(e) to subdivision (a) entitled "Against Whom Assessed."

A perusal of subdivision(a)(1), (2), and (3) indicates that the prevailing party is, in the language of Rule 39(e),

"entitled to costs" depending on the outcome of the appeal. Rule 39(e). For example, subdivision (a)(3) provides "if a judgment is reversed, costs are taxed against the appellee." Rule 39(a)(3).[8] Thus, the awarding of the appellate costs listed in Rule 39(e)(1)-(4) to a prevailing party under (a)(1), (2), or (3) is essentially a ministerial task, specifically entrusted under the Rule 39 to the lower court.

The situation is otherwise with respect to Rule 39 (a)(4), that being, as noted earlier, the subdivision applicable for present purposes to both *Chapman I* and *Chapman II*. Under (a)(4), unlike the other three parts of (a), neither party is presumptively entitled to costs. Indeed, unless "the court" takes the affirmative action of awarding costs to the appellant or appellee, no costs will be awarded under (a)(4).

To interpret "the court" in (a)(4), and elsewhere in Rule 39(a) for that matter, as including the district court would be out of sync with the manner in which the Rule is constructed. The Rule, to partially reiterate, provides essentially ministerial authority to district courts in the taxing of costs on appeal, limited to those situations in which a party is entitled to such an award under subdivision(a). Such an entitlement under (a)(1), (2), and (3) is subject to a court

---

[8] That entitlement to costs, however, is subject to "court orders [directing] otherwise." Rule 39(a).

-34-

order to the contrary, just as the non-entitlement under (a)(4) may be overridden by a court order as well. If such an order may be issued by a district judge, that would mean, for example, if a judgment was reversed, the appellee's entitlement to appellate costs could be upset by a district judge, i.e., a stranger to the appeal process except for the fact that his or her order or judgment was the subject of the appeal. That makes no sense. Instead, a fair reading of the Rule indicates that the draftperson used the term "district court" where intended, viz. in Rule 39(e) and used the term "this court" in Rule 39(a) to indicate a circuit court. *See Conway Groves, Inc. v. Coopers & Lybrand*, 158 F.R.D. 505, 507 (M.D. Fla. 1994). As a result, I am not authorized to grant Plaintiff the costs she incurred on appeal with respect to *Chapman I* and *Chapman II*. Accordingly, Plaintiff's application for costs on appeal is denied.[9]

### 4. Conclusion Regarding Plaintiff's Application for Costs

For the reasons indicated, Plaintiff's application for costs incurred in the district court is granted, including her application with respect to expert witnesses but only to the

---

[9] Rule 39(d), entitled "Bill of Costs: Objections; Insertion in Mandate," quoted earlier, provides in part that "[a] party who wants costs taxed must — within 14 days after entry of judgment — file [an appropriate statement] with the circuit clerk." Rule 39(d)(1). The applicability of that subdivision and, if applicable, Plaintiff's compliance therewith, has not been broached by either party.

extent provided in 28 U.S.C. § 1821; her application for costs incurred on appeal is denied on the ground that Rule 39(a)(4) provides that costs are taxed only if so ordered by "the court," the court being the Circuit Court, not this Court.

CONCLUSION

For the reasons indicated, Plaintiff's request for an award of attorneys' fees is denied and her request for costs is granted in part and denied in part.

SO ORDERED.

Dated: May 16, 2007
       Central Islip, New York

_____/S/_____
DENIS R. HURLEY, U.S.D.J.